CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ELENA SADOWSKY (Bar No. 302053)
(E-Mail: Elena_Sadowsky@fd.org)
REID ROWE (Bar No. 321498)
(E-Mail: Reid_Rowe@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JEFFREY DOVE OLSEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JEFFREY DOVE OLSEN,<br><br>    Defendant. | Case No. 17-76-JWH<br><br>**DEFENDANT'S NOTICE OF MOTION; MOTION TO DISMISS INDICTMENT FOR IMPROPER DELEGATION AND VAGUENESS**<br><br>Hearing Date: March 10, 2025<br>Hearing Time: 10:00 a.m. |

**To: United States Attorney Joseph McNally and Assistant United States Attorney Caitlin Cambell, Danbee Kim, and Brett Sagel**:

PLEASE TAKE NOTICE that on March 10, 2025 at 10:00 a.m., in the courtroom of the Honorable John W. Holcomb, United States District Judge, or as soon thereafter as counsel may be heard, defendant Jeffrey Dove Olsen, by and through his counsel of record, Deputy Federal Public Defenders Elena Sadowsky and Reid Rowe, will bring on for hearing the following motion:

**<u>MOTION</u>**

Defendant Jeffrey Dove Olsen, by and through his attorney of record, Deputy Federal Public Defenders Elena Sadowsky and Reid Rowe, hereby moves to dismiss the indictment because Congress improperly delegated to the Executive Branch enforcement of the Controlled Substances Act against practitioners and because the statute and regulation under which Mr. Olsen is being prosecuted is void for vagueness. This motion is made pursuant to the U.S. Constitution and Federal Rule of Criminal Procedure 12. This motion is based on the attached Memorandum of Points and Authorities, exhibits, declarations, all files and records in this case, and any additional evidence and argument presented at or before the hearing on this motion. The parties met and conferred but were unable to resolve this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 24, 2025      By  /s/ Elena Sadowsky
ELENA SADOWSKY
REID ROWE
Deputy Federal Public Defenders
Attorneys for Jeffrey Dove Olsen

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT .......................................................................................................2

    A.    The CSA Violates the Constitution's Non Delegation Doctrine. .................2

          1.    The state of the CSA against practitioners. .......................................2

          2.    The CSA violates the Constitution's non-delegation doctrine. ..........3

    B.    Section 1306.04 is void for vagueness as applied to Dr. Olsen. ...................7

III. CONCLUSION....................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Colautti v. Franklin*,
   439 U.S. 379 (1979)........................................................................................................7

*Gonzales v. Oregon*
   546 U.S. 243, 257 (2006) ..........................................................................................6, 8

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972).......................................................................................................7

*Gundy v. United States*,
   588 U.S. 128 (2019) (Gorsuch, J., dissenting, joined by Roberts, C.J.,
   and Thomas, J.)..............................................................................................................4

*Humphreys v. Drug Enf't Admin.*,
   96 F.3d 658 (3d Cir. 1996) ............................................................................................8

*Johnson v. United States*,
   135 S. Ct. 2551, 2558 (2015)........................................................................................9

*Kolender v. Lawson*,
   461 U.S. 353 .................................................................................................................7

*Liparota v. United States*,
   471 U.S. 419 (1985).......................................................................................................3

*Mistretta v. United States*,
   488 U.S. 361 (1989).................................................................................................4, 7

*Panama Refining Co. v. Ryan*,
   293 U.S. 388 (1935).................................................................................................3, 4

*Paul v. United States*,
   140 S. Ct. 342 (2019) (Kavanaugh, J., statement respecting the denial
   of certiorari) ...................................................................................................................4

*Schwartzmiller v. Gardner*,
   752 F.2d 1341 (9th Cir. 1984) .......................................................................................7

*Touby v. United States*
   500 U.S. 160, 162–63 (1991) ........................................................................................5

# TABLE OF AUTHORITIES

Page(s)

*United States v. August*,
  984 F.2d 705 (6th Cir.1992) ................................................................................ 8

*United States v. Feingold*,
  454 F.3d 1001 (9th Cir. 2006) ......................................................................... 3, 8

*United States v. Kilbride*,
  584 F.3d 1240 (9th Cir. 2009) ............................................................................ 7

*United States v. Nat'l Dairy Prods Corp.*,
  372 U.S. 29 (1963) .............................................................................................. 7

*United States v. Powell*,
  423 U.S. 87 (1975) .............................................................................................. 7

*United States v. Rosenberg*,
  515 F.2d 190 (9th Cir. 1975) .............................................................................. 7

*United States v. Ruan*
  597 U.S. 450 (2022) ............................................................................................ 8

*United States v. Singh*,
  54 F.3d 1182 (4th Cir.1995) ............................................................................... 8

*United States v. Washam*,
  312 F.3d 926 (8th Cir. 2002) .............................................................................. 7

**Federal Statutes**

21 U.S.C. § 802(21) ................................................................................................. 2

21 U.S.C. § 811(h) ................................................................................................... 5

21 U.S.C. § 821 .................................................................................................... 3, 5

21 U.S.C. § 822(a) & 823(f) .................................................................................... 2

21 U.S.C. § 829 ........................................................................................................ 3

21 U.S.C. § 841(a)(1) ........................................................................................... 1, 2

21 U.S.C. § 871(b) ........................................................................................... 3, 5, 6

CSA ............................................................................................................... *passim*

# TABLE OF AUTHORITIES

Page(s)

**Regulations**

21 C.F.R. § 1306.04 ................................................................................................*passim*

**Other Authorities**

First Amendment ........................................................................................................7

U.S. Const. Art. I, § 1 .................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Dr. Olsen is charged in a 35-count indictment related to the prescribing of Oxycodone, Amphetamine Salts (a.k.a Adderall), Alprazolam (a.k.a Xanax), and Hydrocodone, in addition to one count of false statement on a DEA Registration Application. *See* Dkt. 1. Section 841(a)(1) states that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). With respect to health care professionals, who are legally allowed to distribute controlled substances under certain circumstances, the prohibition in § 841 means that "[a] prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04. Extending the Controlled Substance Act's (CSA) reach to Dr. Olsen's conduct raises two significant constitutional concerns: improper delegation and vagueness. Both require dismissal.

When the CSA criminalizes the sale of street drugs, the line demarcating criminality from lawful conduct is clear: distributing controlled substances is simply illegal, no *ifs*, *ands*, or *buts*. Due process requires that clear line. But the CSA allows medical practitioners to distribute some controlled substances, and the field of medicine is far more nuanced, complicated, subjective, and ever-evolving. The law here hints at only a vague line, requiring simply that the prescriptions be written with a "legitimate medical purpose" and within the "usual course of [her] professional practice" of medicine. 21 C.F.R. § 1306.04(a). That's it. There is no definition for what "usual course of [] professional practice" means or when a departure from the "usual course of [] professional practice" transcends from simple malpractice to criminal misconduct.

Making matters worse, the CSA then permitted the Attorney General to draw the line itself and decide when doctors become drug dealers. In doing so, Congress

1

delegated too much power to the Executive Branch without an intelligible standard, ultimately leaving the government—or the government's hired experts—to decide what is criminal, what is malpractice, and what is within the "usual course of [] professional practice" with the benefit of hindsight and additional years of growing research into the role of controlled substances in the medical field.  Without a clear line within this hazy background of federal criminal law, administrative regulations, and medical research, Dr. Olsen could not have known whether he crossed it.  Thus, the CSA is unconstitutionally vague when applied to the alleged misconduct here.

## II. ARGUMENT

There are two bases to dismiss the Indictment: (1) Congress improperly delegated unfettered authority to the Executive Branch to decide what the "usual course" of practice means; and (2) The absence of any clear standard also failed to put Dr. Olsen on notice that his precise conduct was unlawful.

**A.  The CSA Violates the Constitution's Non Delegation Doctrine.**

   **1.   The state of the CSA against practitioners.**

The Controlled Substances Act (CSA) makes it unlawful, "*except as authorized . . . for any person [to] knowingly or intentionally . . . distribute, or dispense . . . a controlled substance.*" 21 U.S.C. § 841(a)(1) (emphasis added).  Health practitioners are among those "authorized" to dispense a controlled substance once they have received a (1) state license to practice medicine and (2) a certificate of registration from the Attorney General, who has delegated that authority to the DEA.  *Id.* §§ 822(a) & 823(f).  Once authorized, a practitioner may "distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research." *Id.* § 802(21).

The CSA then broadly authorized the Attorney General "to promulgate rules and regulations and to charge reasonable fees relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances and to listed

chemicals." *Id.* § 821; *see also id.* § 871(b) (granting the AG the authority to create and "enforce *any* rules, regulations, and procedures" (emphasis added)).

The Attorney General, in turn, promulgated 21 C.F.R. § 1306.04, the central regulation governing practitioners, which states that controlled substance prescription "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice"; conversely, "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances." 21 C.F.R. § 1306.04(a).

### 2. The CSA violates the Constitution's non-delegation doctrine.

Whether a prescribing physicians' conduct violates the CSA focuses on whether he or she complies with the Attorney General's implementing regulation that a prescription must "issued for a legitimate medical purpose" while he or she is "acting in the usual course of his [or her] professional practice." *United States v. Feingold*, 454 F.3d 1001, 1003-04 (9th Cir. 2006) (quoting § 1306.04(a)).  By delegating this authority to the Executive Branch without *any* limitations or guidance, Congress exceeded its constitutional authority by enabling the Executive Branch to legislate in its sole (and changing) discretion how to regulate practitioners.  That the Executive Branch then merely parroted the malpractice standard and shows how unqualified it was to do so.

"All legislative Powers herein granted shall be vested in a Congress of the United States."  U.S. Const. art. I, § 1.  "Congress manifestly is not permitted to abdicate or transfer to others the legislative functions" with which it is vested. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935).  "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419, 424 (1985).

3

Agencies, therefore, may not exercise legislative power to declare "what circumstances . . . should be forbidden" by federal law. *Panama Refining*, 293 U.S. at 418. This "nondelegation doctrine is rooted in the principle of separation of powers." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). While the non-delegation doctrine does not prevent Congress from "obtaining the assistance of its coordinate Branches," it can do so only if it provides clear guidance. *Id.* at 372–73.

The Supreme Court has openly struggled with defining Legislature's delegation limitations. Traditionally, the Court has allowed agencies to exercise authority so long as Congress set out an "intelligible principle to which the person or body authorized to [exercise the authority] is directed to conform." *Id.* at 372 (quotations omitted, alteration in original). But that test lacks clear contours. Furthermore, five members of the Supreme Court have recently expressed interest reconsidering that standard. *See Gundy v. United States*, 588 U.S. 128, 149-179 (2019) (Gorsuch, J., dissenting, joined by Roberts, C.J., and Thomas, J.); *id.* at 148-149 (Alito, J., concurring in the judgment); *Paul v. United States*, 140 S. Ct. 342 (2019) (mem.) (Kavanaugh, J., statement respecting the denial of certiorari).

Even under the "intelligible principle" standard, the Supreme Court has suggested that it would present "a nondelegation question" if a statute provides an agency with "unguided" or "unchecked" authority to define a crime. *Gundy*, 588 U.S. at 136 (plurality op.). While rules implementing a statute are one thing, rules creating a new crime are another. *See id.* at 145-46. As Justice Gorsuch highlighted, a delegation that "purports to endow the nation's chief prosecutor with the power to write his own criminal code" "scrambles th[e] design" of the Constitution, which "promises that only the people's elected representatives may adopt new federal laws restricting liberty." *Id.* at 149 (Gorsuch, J., dissenting).

Here, Congress improperly delegated its authority when passing the CSA without giving sufficient guidance on when prescribing controlled substances becomes illegal. The two sections of the CSA that authorized the Attorney General to promulgate rules

4

1 and regulations concerning the dispensing of controlled substances gave no guidance
2 whatsoever. *See* 21 U.S.C. § 821 ("The Attorney General is authorized to promulgate
3 rules and regulations and to charge reasonable fees relating to the registration and
4 control of the manufacture, distribution, and dispensing of controlled substances and to
5 listed chemicals."); 21 U.S.C. § 871(b) ("The Attorney General may promulgate and
6 enforce any rules, regulations, and procedures which he may deem necessary and
7 appropriate for the efficient execution of his functions under this subchapter."). By its
8 terms, there could be no broader delegation of authority to the Attorney General.

9       These statutes, which provided the Attorney General no guidance when
10 promulgating § 1306.04 to allow practitioners to prescribe controlled substances, stand
11 in marked contrast to another section of the CSA that the Supreme Court held did not
12 violate the nondelegation doctrine. In *Touby v. United States*, the Court addressed
13 whether 21 U.S.C. § 811(h) violated the nondelegation doctrine where it authorized the
14 Attorney General to add a substance to Schedule I on a temporary basis. *See* 500 U.S.
15 160, 162–63 (1991). Specifically, § 811(h) allowed the Attorney General to
16 temporarily schedule a substance if "necessary to avoid an imminent hazard to the
17 public safety," only after considering certain factors relevant to the scheduling of
18 controlled substances, including "actual abuse, diversion from legitimate channels, and
19 clandestine importation, manufacture, or distribution." 21 U.S.C. § 811(h); *see also*
20 *Touby*, 500 U.S. at 166. The Court rejected the nondelegation challenge in *Touby*
21 because "Congress has placed multiple specific restrictions on the Attorney General's
22 discretion to define criminal conduct [in the statute]. These restrictions satisfy the
23 constitutional requirements of the nondelegation doctrine." 500 U.S. at 167.

24       Here, by contrast, the relevant portions of the CSA gave no guidance, let alone
25 "multiple specific restrictions", on when the Attorney General may authorize the
26 prescribing of controlled substances. *See* 21 U.S.C. § 821 ("The Attorney General is
27 authorized to promulgate rules and regulations and to charge reasonable fees relating to
28 the registration and control of the manufacture, distribution, and dispensing of

controlled substances and to listed chemicals."); 21 U.S.C. § 871(b) ("The Attorney General may promulgate and enforce any rules, regulations, and procedures which he may deem necessary and appropriate for the efficient execution of his functions under this subchapter.").

The question here is whether the CSA gives any "intelligible principle" to the Attorney General on what it means to be within the "usual course" of medical practice? It does not. As the Court noted in *Gonzales v. Oregon*, the regulation's repetition of the statutory language "gives little or no instruction on a central issue in this case: Who decides whether a particular activity is in 'the course of professional practice' or done for a 'legitimate medical purpose'?" 546 U.S. 243, 257 (2006).

This leaves the Attorney General, federal prosecutors, and the experts they hire with unfettered power to decide when someone crosses the hazy line from civil medical malpractice into criminal misconduct, a power which should typically be reserved for the legislature. Even with the line against medical "drug peddling" drawn in *Gonzales*, the regulation and statute are not framed in that language; they are framed in terms of legitimate medical practice. Without a definition of "legitimate medical practice," the Attorney General decides on its own what that means, and allows it to criminalize conduct that does not qualify as "drug peddling"--*i.e.*, pushing drugs on people for financial gain. *See Gonzales*, 546 U.S. at 269 ("In *Moore*, we addressed a situation in which a doctor 'sold drugs, not for legitimate purposes, but primarily for the profits to be derived therefrom.'" (quoting 423 U.S. at 135)).

So much conduct falls in the space between pushing drugs for profit and legitimate medical practice, including, for example, medical malpractice. The lack of any definition of what legitimate medical practice means allows the Attorney General to criminalize anything in that space without a meaningful, "intelligible principle." The constitution requires that Congress provide more guidance than this when it delegates authority to the Executive Branch, especially regarding criminal conduct. Thus, §

6

1306.04 (the implementing regulation) violates the nondelegation doctrine, and the Court should dismiss the Indictment. *See, e.g.*, *Mistretta*, 488 U.S. at 374 n.7.

**B. Section 1306.04 is void for vagueness as applied to Dr. Olsen.[1]**

The Fourteenth Amendment's due process clause "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 353, 357. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Statutes that involve criminal sanctions require enhanced clarity. *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009).

Although a statute can be unconstitutionally vague on its face or as applied to the facts of a specific case, *see Schwartzmiller v. Gardner*, 752 F.2d 1341, 1348 (9th Cir. 1984), "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975) (internal quotation marks omitted). This means that "[i]n determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *United States v. Nat'l Dairy Prods Corp.*, 372 U.S. 29, 33 (1963); *see Kilbride*, 584 F.3d at 1256-57 ("A statute is unconstitutionally vague as applied if it failed to put a defendant on notice that his conduct was criminal."). This inquiry does not, however, look at what the particular defendant understood the statute to mean; rather, it looks at what a person of ordinary intelligence would reasonably understand the statute to prohibit. *United States v. Washam*, 312 F.3d 926, 930 (8th Cir. 2002) (citing *Nat'l Dairy Prods. Corp.*, 372 U.S. at 32-33); *see Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (stating that a statute

---

[1] Fifty years ago, the Ninth Circuit concluded that the statute was not so vague as to violate due process. *See United States v. Rosenberg*, 515 F.2d 190, 197-198 (9th Cir. 1975). While recognizing *Rosenberg* has not been explicitly overturned, various Courts of Appeals and the Supreme Court have since noted the ambiguity in the regulatory language. To the extent this Court finds that *Rosenberg* is controlling, we seek to preserve this issue for appellate review.

7

is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute") (internal quotation marks omitted).

There is no definition of what it means to issue a prescription outside "the usual course of professional practice." 21 C.F.R. § 1306.04(a). The Supreme Court has noted the regulatory language's ambiguity. *See Gonzales*, 546 U.S. at 258; *see also United States v. Singh*, 54 F.3d 1182, 1187 (4th Cir.1995); *United States v. August*, 984 F.2d 705, 713 (6th Cir.1992) ("There are no specific guidelines concerning what is required to support a conclusion that an accused acted outside the usual course of professional practice."). Indeed, juries are instructed that there is no precise definition.

At face value, § 1306.04 seems to suggest that any malpractice is a federal felony. The Supreme Court made clear in *United States v. Ruan* that malpractice is insufficient. 597 U.S. 450 (2022). The "usual course of professional practice" requires something more than the failure to abide by the civil duty of care. While what is *insufficient* to convict a practitioner under the CSA may be clear, this does not answer what is necessary. There remain only the words in the regulation with no explanation of what it means to prescribe "in the usual course of [one's] professional practice."

While the courts of appeal are emphatic that the "duty of care" and "practice generally recognized and accepted in the United States" are not the same thing, none provide a meaningful method of distinguishing between the two. The phrase "usual course of medical practice" could be read to mean a violation of state medical regulations. Alternatively, it could mean deviation from the norms adhered to by most physicians in the field even where those norms do not conform with medical regulations. *See, e.g.*, *Feingold*, 454 F.3d at 1011 n. 3 ("The term 'professional practice' implies at least that there exists a reputable group of people in the medical profession who agree that a given approach to prescribing controlled substances is consistent with legitimate medical treatment."); *Humphreys v. Drug Enf't Admin.*, 96 F.3d 658, 662 (3d Cir. 1996) (reversing administrative decision to revoke doctor's

8

registration where the administrator failed to "discuss the one and only defense raised … that prescribing antidepressants and other such drugs for a famous patient in the name of another individual in order to preserve the privacy of the patient was, in fact, the 'usual course' of medical practice in circumstances such as these."). One might expect that a doctor could turn to CDC or AMA guidelines on the prescription of opioids to determine what constitutes the "usual" course of professional practice. However, the CDC guidelines on the use of opioids are advisory.

Moreover, the "usual course of professional practice" suffers from two different forms of indeterminacy. It is indeterminate as to how it should be measured because there is no clear way to determine the standard by which "usual course of professional practice" is to be determined. It is also indeterminate as to degree, because it is not clear how "usual" or by what percentage of physicians a practice must be generally accepted before deviation becomes criminal. *See Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015) ("By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.").

For these reasons, the regulatory language failed to put Dr. Olsen on notice of the criminal conduct necessary to trigger that standard and therefore is unconstitutionally vague.

### III. CONCLUSION

Applying the CSA to care providers in a clear, intelligible way is fraught with constitutional concerns unique from the typical drug trafficking case. In allowing the government to determine what is criminal versus malpractice without any limitations, Congress abdicated too much power. For any of these reasons, the Indictment should be dismissed.

                                      Respectfully submitted,

                                      CUAUHTEMOC ORTEGA
                                      Federal Public Defender

DATED: February 24, 2025      By  */s/ Elena Sadowsky*
                                      ELENA SADOWSKY
                                      REID ROWE
                                      Deputy Federal Public Defenders
                                      Attorneys for Jeffrey Dove Olsen